IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | | |
|---|---|---|
| CARLTON HUGHEY SCRANTON, | ) | Cause No. CV 06-29-H-DWM-RKS |
| | ) | |
| Petitioner, | ) | |
| | ) | ORDER and |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| WARDEN MacDONALD, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

On June 19, 2006, Petitioner Carlton Scranton filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  Scranton is a state prisoner proceeding pro se.

**I. Preliminary Screening**

Rule 4 of the 2254 Rules requires courts to examine the petition before ordering the respondent to file an answer or any other pleading.  The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  *Id*.  If summary dismissal is not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order."  *Id.*

**II. Scranton's Allegations**

Scranton challenges the Parole Board's denial of his applications for parole.  He contends

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

that he was promised "some kind of play" if he completed an intensive treatment program.  *See* Pet. (doc. 1) at 2.  He also asserts that he has a liberty interest in parole, *see* Pet'r Br. (doc. 2) at 4, ¶ VI; that he was denied equal protection and application of the law because other persons who completed the treatment program were paroled, *id*. at 6, ¶ VII; and that incarceration beyond his parole eligibility date violates the constitutional prohibition against cruel and unusual punishment, *id*. at 9 ("Third Issue").

Scranton attached several exhibits to his Petition, including the Board's "Case Disposition" forms dated January 20, 2004 (Ex. G), and January 31, 2006 (Ex. H).

## III. Analysis

Scranton's exhibits conclusively show that he is not entitled to relief.  While there may be procedural bars to the petition, including lack of exhaustion, it is more efficient to proceed to the merits.  *Cf.* 28 U.S.C. § 2254(b)(2).

### A. Liberty Interest and Due Process

Scranton asserts that he was "promised release" if he completed the intensive treatment program.  In a June 2005 letter to Craig Thomas, the Parole Board's Executive Director, Scranton stated that a Ms. Semenza told him he would receive early parole if he took the intensive treatment program offered at his facility.  *See* Compl. Ex. G at 2.  Scranton's own report of her statement is hearsay.  Moreover, he does not show that Ms. Semenza had the authority to bind the Parole Board to a particular decision.  It is questionable that he could prove either the promise or Semenza's authority to obligate the Board.  He probably did not have a liberty interest in parole in the first place.

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

However, even assuming the doubtful proposition that Scranton had a liberty interest in parole,[1] he would not be entitled to habeas relief, because he received all the due process that was required. A liberty interest does not confer a right to parole or even create a presumption in favor of parole. A liberty interest only confers an entitlement to due process before parole may be denied. *See, e.g.*, *Board of Regents v. Roth*, 408 U.S. 564, 569 (1971); *Erickson v. United States*, 67 F.3d 858, 861 (9th Cir. 1995).

In the context of a parole hearing, due process requires that the inmate receive notice of the Board's consideration of his suitability for parole, a hearing or interview with the Board, and a written statement of reasons for any denial of parole, and that there be some evidence to support any denial of parole. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 16 (1978); *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003) (applying *Hill* to state parole board's decision); *Jancsek v. Oregon Bd. of Parole*,

---

[1] A prisoner has no federal constitutional right to be conditionally released before the expiration of a valid sentence. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1978). While a state statute may create an expectation of parole and therefore give rise to a liberty interest protected by the Due Process Clause, *see, e.g., Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987), the statute that applies to Scranton says only that the Board "*may* release on nonmedical parole . . . any person . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community" and that "[a] prisoner *may* be placed on parole only when the board believes that the prisoner is able and willing to fulfill the obligations of a law-abiding citizen." Mont. Code Ann. § 46-23-201(1) (2003). In both *Allen* and *Greenholtz*, the applicable statutes used the mandatory language of "shall," not the permissive "may."

This Court has not decided whether the current version of Mont. Code Ann. § 46-23-201 suffices to give rise to a reasonable expectation of parole and thus to create a liberty interest. The Montana Supreme Court has held that Montana inmates sentenced after the Legislature's amendment of the statute at issue in *Allen* do not have a federally protected liberty interest in parole. *See McDermott v. McDonald*, 24 P.3d 200, 202 (Mont. 2001) (citing *Worden v. Montana Bd. of Pardons and Parole*, 962 P.2d 1157, 1165 ¶ 42 (Mont. 1998)).

833 F.2d 1389, 1390 (9th Cir. 1987) (same).[2]

Scranton's exhibits show that he went through the normal procedures. The Board's Case Dispositions give clear statements of the reasons his parole application was denied: Scranton's previous criminal history, his poor history under supervision, and the severity of his offense. *See* Pet. Exs. G at 1, H at 1. In addition, when Scranton wrote to Thomas in June 2005, seeking reconsideration of the Board's decision, Thomas responded that "[b]ecause of your extensive criminal history spanning five decades, the Board feels their prior disposition is appropriate." Pet. Ex. G at 2.

Because Scranton received all the process that could be due to him in connection with the Board's denial of his parole, and because he probably had no liberty interest in parole anyway, there is no merit to his claim that his liberty interest or his right to due process were violated.

**B. Equal Protection**

Scranton contends that, because all of the other people who completed the intensive treatment program have been paroled and he has not, the Board violated his right to equal protection of the laws. To state a claim for a violation of equal protection, a prisoner must allege invidious discrimination that deprives him of some fundamental constitutional guarantee. *See, e.g., Turner v. Safley*, 482 U.S. 78, 84 (1987) (citing *Procunier v. Martinez*, 416 U.S. 396, 405-06 (1974),

---

[2] "Some evidence" means, essentially, "any evidence":
This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the board.
*Hill*, 472 U.S. at 455-56 (internal quotations and citations omitted) (emphases added).

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

*overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)).  Scranton has not identified any fundamental constitutional guarantee of which he was deprived, since his completion of the intensive treatment program did not entitle him to parole.  Nor has he alleged that he was discriminated against on some invidious basis such as his race.  The Parole Board discriminated between Scranton and the other prisoners who completed the program on the grounds that the other prisoners were suitable for parole and Scranton was not.  That is the Parole Board's job and is an entirely permissible form of discrimination.  There is no merit to Scranton's claim that the Board violated his right to equal protection of the laws.

### C. Cruel and Unusual Punishment

Because there is no federal right to be paroled before the completion of a lawful sentence, *see Greenholtz*, 442 U.S. at 7, it is neither cruel nor unusual for a prisoner to be held in prison for the full period of the sentence imposed against him.  There is no merit to this claim.

### IV. Motion to Expedite

Given the Court's recommendation, the motion to expedite is moot.

Based on the foregoing, the Court enters the following:

### ORDER

Scranton's motion to expedite (doc. 4) is DENIED AS MOOT.

The Court also enters the following:

### RECOMMENDATION

Scranton's Petition should be DENIED on the merits.

ORDER and FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the Petitioner.  Petitioner is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days[3] after the entry date reflected on the Notice of Electronic Filing, or objection is waived.

Scranton must immediately inform the Court and counsel for the Respondents of any change in his mailing address.  Failure to do so may result in dismissal of this action without notice to Scranton.

DATED this <u>29th</u> day of January, 2007.

<u>/s/ Keith Strong</u>
Keith Strong
United States Magistrate Judge

---

[3] In prisoner cases, this Court extends the time to object to twenty days in order to take into account the Supreme Court's ruling in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), and the somewhat greater mailing time that is involved in sending documents into and out of a prison facility.